**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LONGWEI PETROLEUM INVESTMENT | : | |
| HOLDING LIMITED, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | NO. 2:13-cv-01442-ER |
| GEO INVESTING, LLC, JON R. CARNES, | : | |
| SEEKING ALPHA LTD., and JOHN DOES 1-10 | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANT**
**GEOINVESTING, LLC'S MOTION TO DISMISS THE COMPLAINT**

William M. McSwain (PA 86499)
Jennifer E. Burke (PA 309164)
Nicholas S. Feltham (PA 312335)
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6999
Phone:  215-988-2700
Fax:  215-988-2757
E-mail:  william.mcswain@dbr.com;
jennifer.burke@dbr.com;
nicholas.feltham@dbr.com

*Attorneys for Defendant GeoInvesting, LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

SUMMARY OF ARGUMENT ............................................................................................ 5

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ..................................................................................................................... 7

I.      PLAINTIFF HAS NOT PROPERLY ALLEGED DIVERSITY JURISDICTION .......... 7

        A.      Plaintiff's Jurisdictional Allegations Are Insufficient to Establish
Diversity Jurisdiction ................................................................................... 7

        B.      In Any Event, the Presence of Jon Carnes, a "Stateless" U.S. Citizen,
Destroys Diversity Jurisdiction over This Action ......................................... 8

II.     PLAINTIFF'S COMPLAINT FAILS TO SATISFY THE ELEMENTS OF A
CIVIL RICO CAUSE OF ACTION ............................................................................ 10

        A.      The RICO Statute Explicitly Prohibits Securities Fraud from Forming the
Basis of a Cause of Action ......................................................................... 10

        B.      Plaintiff's Complaint Is Based on Conduct That Would Be Actionable as
Securities Fraud and Therefore the Civil RICO Claim Must Be Dismissed ...... 13

III.    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
JURISDICTION OVER PLAINTIFF'S REMAINING STATE LAW CLAIMS .......... 16

IV.    PLAINTIFF'S DAMAGES THEORIES ARE FUNDAMENTALLY FLAWED
AND PROVIDE NO BASIS FOR RECOVERY ......................................................... 18

        A.      Pennsylvania Courts Have Not Recognized Plaintiff's Novel "Loss of
Market Capitalization" Theory .................................................................... 18

        B.      Plaintiff Has Pled No Causal Link Between Its Delisting from the New
York Stock Exchange's NYSE MKT and GeoInvesting's Conduct .................. 20

        C.      Plaintiff Cannot Recover Unidentified Litigation Costs ................................ 20

        D.      Plaintiff Fails to Identify a Single Lost Business Relationship ....................... 21

i

V.      PLAINTIFF FAILS TO PLEAD ANY VIABLE STATE LAW CLAIMS ................... 21

        A.      The Defamation Claim Should Be Dismissed Because GeoInvesting's
                Statements Are Protected Opinion and Plaintiff Has Not Pled That
                GeoInvesting Acted with Malice ...................................................................... 22

                1.      The Geo Report Is Constitutionally Protected Opinion. .......................... 22

                2.      Plaintiff Is a Public Figure, or at Least a Limited Purpose Public
                        Figure, for Defamation Purposes. ........................................................... 24

        B.      Plaintiff's Commercial Disparagement Claim Fails Because Plaintiff Has
                Not Pled That It Incurred a Monetary Loss ........................................................ 26

        C.      The Civil Conspiracy Claim Should Be Dismissed Because the
                Defamation and Commercial Disparagement Claims Fail .................................. 27

        D.      Plaintiff Has Not Pled the Elements of a Fraud Claim ....................................... 28

        E.      The Tortious Interference Claim Fails Because Plaintiff Has Not Pled That
                It Lost Any Existing or Prospective Business Relationships ............................... 29

CONCLUSION ...................................................................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pa.*,
923 A.2d 389 (Pa. 2007) ...................................................................................24, 25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................6, 26, 30

*Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*,
189 F.3d 321 (3d Cir. 1999).........................................................................11, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................6

*Burton v. Ken-Crest Servs., Inc.*,
127 F. Supp. 2d 673 (E.D. Pa. 2001) ...................................................................12

*Carbis Walker, LLP v. Hill, Barth & King, LLC*,
930 A.2d 573 (Pa. Super. Ct. 2007) ....................................................................19

*Chamberlain v. Giampapa*,
210 F.3d 154 (3d Cir. 2000)..................................................................................19

*Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*,
177 F.3d 210 (3d Cir. 1999)....................................................................................7

*Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*,
No. 1:00CV98K, 2001 WL 670927 (D. Utah March 26, 2001) ...........................19

*Compuware Corp. v. Moody's Investors Servs.*,
499 F.3d 520 (5th Cir. 2007) ...............................................................................24

*Curran v. Philadelphia Newspapers, Inc.*,
546 A.2d 639 (Pa. Super. Ct. 1988).....................................................................26

*Dougherty v. Bowerton Times*,
547 A.2d 778 (Pa. Super. Ct. 1988)......................................................................23

*Eagletech Commc'ns Inc. v. Citigroup, Inc.*,
No. 07-60668-CIV, 2008 WL 3166533 (S.D. Fla. June 27, 2008)..................13, 16

*Erie R.R. v. Tompkins*,
304 U.S. 64 (1938)................................................................................................19

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976)..............................................................................................15

*Ertel v. Patriot-News Co.*,
   674 A.2d 1038 (Pa. 1996) ...................................................................................28

*Food Team Int'l, Ltd. v. Unilink, LLC*,
   872 F. Supp. 2d 405 (E.D. Pa. 2012) ...................................................................19

*Foster v. Pitney Bowes Corp.*,
   No. Civ. A. 11-7303, 2013 WL 487196 (E.D. Pa. Feb. 8, 2013) .......................7, 8

*Fotochrome, Inc. v. N.Y. Herald Tribune, Inc.*,
   305 N.Y.S.2d 168 (N.Y. Sup. Ct., Queens Cnty. 1969) ...................................24, 25

*Frett-Smith v. Vanterpool*,
   511 F.3d 396 (3d Cir. 2008) ..................................................................................9

*Gatz v. Ponsoldt*,
   297 F. Supp. 2d 719 (D. Del. 2003) ................................................................12, 16

*Gen. Star Nat'l Ins. Co. v. Liberty Mut. Ins. Co.*,
   960 F.2d 377 (3d Cir. 1992) .................................................................................19

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) ..............................................................................................25

*Hankin Family P'ship v. Upper Merion Tp.*,
   Civil Action No. 01-1622, 2012 WL 43599 (E.D. Pa. Jan. 6, 2012) ...................27

*Hardord Cnty., Md. v. Mid-State Bank & Trust*,
   No. Civ. A. 98-817, 1999 WL 704116 (W.D. Pa. May 19, 1999) ....................12, 13

*Hedges v. Musco*,
   204 F.3d 109 (3d Cir. 2000) .................................................................................17

*Hemispherx Biopharma, Inc. v. Asensio*,
   No. 3970 July Term 2000, 2002 WL 31387765 (Ct. Com. Pl. Philadelphia Cnty., Oct.
   22, 2002) ..........................................................................................................29, 30

*Howard v. Am. Online, Inc.*,
   208 F.3d 741 (9th Cir. 2000) ................................................................................16

*Huddleston v. Infertility Ctr. of Am., Inc.*,
   700 A.2d 453 (Pa. Super. Ct. 1997) ..................................................................28, 29

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   86 F. Supp. 2d 481 (E.D. Pa. 2000) .....................................................................12

*Kanter v. Barella*,
   489 F.3d 170 (3d Cir. 2007) .................................................................................31

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179 (1997)................................................................................................10

*Kostryckyj v. Pentron Lab. Techs., LLC*,
    52 A.3d 333 (Pa. Super. Ct. 2012)......................................................................28

*Logan v. Mirror Printing Co. of Altoona, Pa.*,
    600 A.2d 225 (Pa. Super. Ct. 1991)................................................................20, 21

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)................................................................................................21

*Matthews v. Kidder, Peabody & Co.*,
    161 F.3d 156 (3d Cir. 1998)..................................................................................11

*McKeeman v. Corestates Bank, N.A.*,
    751 A.2d 655 (Pa. Super. Ct. 2000)................................................................27, 28

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006)................................................................................................15

*Metz v. United Counties Bancorp.*,
    61 F. Supp. 2d 364 (D.N.J. 1999)........................................................................12

*Miss. Band of Choctaw Indians v. Holyfield*,
    490 U.S. 30 (1989)..................................................................................................8

*MSLMK Inv. Co. v. JP Morgan Chase & Co.*,
    651 F.3d 268 (2d Cir. 2011)..................................................................................16

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964)..........................................................................................26, 28

*Newman-Green, Inc. v. Alfonzo-Larrain*,
    490 U.S. 826 (1989)..............................................................................................8, 9

*In re Olympia Brewing Co. Sec. Litig.*,
    613 F. Supp. 1286 (N.D. Ill. 1985)....................................................................15, 16

*Osuch v. Optima Mach. Corp.*,
    No. 10-6101, 2011 WL 2708464 (E.D. Pa. July 12, 2011)....................................8

*Overstock.com, Inc. v. Gradient Analytics*,
    61 Cal. Rptr. 3d 29 (Cal. Ct. App. 2007)..............................................................25

*Parano v. O'Connor*,
    641 A.2d 607 (Pa. Super. Ct. 1994)................................................................23, 24

v

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
   998 F.2d 1192 (3d Cir. 1993).................................................................20

*Phillips v. Cnty. of Allegheny*,
   515 F.3d 224 (3d Cir. 2008)...................................................................6

*Phillips v. Selig*,
   959 A.2d 420 (Pa. Super. Ct. 2008)...................................................27, 28

*Phillips v. St. Mary Med. Ctr.*,
   Civil Action No. 12-2363, 2013 WL 1124372 (E.D. Pa. Mar. 19, 2013)..............21

*Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*,
   809 A.2d 243 (Pa. 2002)...............................................................26, 27

*Reliance Ins. Co. v. Barron's*,
   442 F. Supp. 1341 (S.D.N.Y. 1977)..........................................................24

*S.E.C. v. Colonial Inv. & Mgmt. LLC*,
   659 F. Supp. 2d 467 (S.D.N.Y. 2009), *aff'd*, 381 F. App'x 27 (2d Cir. 2010) ......15

*S.E.C. v. Zandford*,
   535 U.S. 813 (2002)...........................................................................15

*Salit v. Ruden, McClosky, Smith, Schuster & Russell*,
   742 So.2d 381 (Fla. Ct. App. 1999)........................................................19

*Schaefer-Condulmari v. US Airways Group, Inc.*,
   No. 09-1146, 2009 WL 4729882 (E.D. Pa. Dec. 8, 2009).............................9

*SCO Group, Inc. v. Novell, Inc.*,
   No. 2:04-CV-139 TS, 2010 WL 413807 (D. Utah Jan. 28, 2010)...................19

*Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist.*,
   730 F.2d 910 (3d Cir. 1984)..................................................................17

*Shiner v. Moriarty*,
   706 A.2d 1228 (Pa. Super. Ct. 1998)......................................................29

*Strawbridge v. Curtiss*,
   7 U.S. (3 Cranch) 267 (1806).................................................................9

*Swiger v. Allegheny Energy, Inc.*,
   540 F.3d 179 (3d Cir. 2008)................................................................8, 9

*Tabas v. Tabas*,
   47 F.3d 1280 (3d Cir. 1995)..................................................................10

vi

*Thompson Coal Co. v. Pike Coal Co.*,
    412 A.2d 466 (Pa. 1979) ................................................................................21, 29

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966) ............................................................................................17

*United States v. Naftalin*,
    441 U.S. 768 (1979) ..............................................................................................2

*Warden v. McLelland*,
    288 F.3d 105 (3d Cir. 2002) ...............................................................................10

*Woodward v. Dietrich*,
    548 A.2d 301 (Pa. Super. Ct. 1988) ...................................................................29

*Zambelli Fireworks Mfg. Co. v. Wood*,
    592 F.3d 412 (3d Cir. 2010) .................................................................................7

**DOCKETED CASES**

*Deer Consumer Prods., Inc. v. Little Grp.*,
    650823/2011, Docket No. 519 (Decision/Order of the Hon. Carol R. Edmead, J.S.C.,
    on Motion Sequence No. 20) (N.Y. Sup. Ct., N.Y. Cnty. Nov. 29, 2012) .........................4, 23

*Silvercorp Metals Inc. v. Anthion Mgmt., LLC*,
    150374/2011, Docket No. 154 (Memorandum Decision of the Hon. Carol R. Edmead,
    J.S.C., on Motion Sequence Nos. 7 & 8), 2012 WL 3569952 (N.Y. Sup. Ct., N.Y.
    Cnty. Aug. 16, 2012) .........................................................................................4, 23

*Sino Clean Energy Inc. v. Alfred Little*,
    651248/2011, Docket No. 59 (Order of Hon. Carol R. Edmead, J.S.C., on Plaintiff's
    Motion to Withdraw the Complaint) (N.Y. Sup. Ct., N.Y. Cnty. Sept. 27, 2012) ..............4, 23

**STATUTES, RULES & REGULATIONS**

15 U.S.C. § 77q .........................................................................................................13, 15

15 U.S.C. § 78c ...............................................................................................................13

15 U.S.C. § 78i ................................................................................................................14

15 U.S.C. § 78j ..........................................................................................................13, 15

18 U.S.C. § 1961 .............................................................................................................10

18 U.S.C. § 1962 ..........................................................................................................2, 10

18 U.S.C. § 1964 .........................................................................................................10, 11

28 U.S.C. § 1331 ..................................................................................................10

28 U.S.C. § 1332 ...........................................................................................7, 8, 9

28 U.S.C. § 1367 ............................................................................................16, 17

42 Pa. Cons. Stat. § 8343 ...............................................................................22

42 Pa. Cons. Stat. § 8344 ...............................................................................24

Fed. R. Civ. P. 9(b) ......................................................................................6, 28

17 C.F.R. § 240.10b-5(b) ...........................................................................13, 14

17 C.F.R. § 242.200 ..........................................................................................2

69 Fed. Reg. 48008 (Aug. 6, 2004) .................................................................15

**OTHER AUTHORITIES**

American Jurisprudence, Securities 5416 (2d ed. 2013) ....................................2

H.R. Conf. Rep. No. 104-369 (1995) ..............................................................11

Restatement (Second) of Torts § 623(A) ........................................................27

Restatement (Second) of Torts § 566, cmt. (c) ...............................................23

1 Robert D. Sack, *Sack on Defamation* § 5:3.7 (4th ed. 2010) ....................24

*SEC v. Paul S. Berliner,* Litigation Rel. No. 20537 (April 24, 2008),
     *available at* http://www.sec.gov/litigation/litreleases/2008/lr20537.htm ..............16

## PRELIMINARY STATEMENT

Plaintiff Longwei Petroleum Investment Holding Limited's claims arise out of the publication of an investigative report that exposed its Chinese-based petroleum business as a fraud.  GeoInvesting developed this report by engaging in round-the-clock video surveillance of Plaintiff's purported business operations, speaking to local residents as well as Plaintiff's own employees who confirmed that the business had been nearly idle since 2011, and analyzing Plaintiff's deficient securities filings.  GeoInvesting noted that in investigating other Chinese-based businesses in the past, Plaintiff's operation amounted to "the most brazen fraud" it had seen to date.

In publishing its 29-page report detailing GeoInvesting's opinion that Plaintiff was operating a fraudulent business, GeoInvesting also disclosed that it had taken a "short" position in Plaintiff's stock.  That is, GeoInvesting believed that the price of the stock would fall.  Following publication of the report, Plaintiff's stock price sharply decreased.  Rather than take responsibility for its blatant fraud on investors, Plaintiff now seeks to attack GeoInvesting for publishing this exposé.

This is not the first time that these defendants, including GeoInvesting and Jon Carnes, have been criticized for telling the truth and voicing their opinions about fraudulent Chinese companies.  In three prior cases, these defendants have faced similar allegations, and in all three cases, the claims against them were dismissed or withdrawn.  Like those other cases, Plaintiff's complaint here is nothing more than a half-hearted attempt to shift the blame for perpetrating a fraud on its shareholders to those who revealed the truth.  Most importantly, for purposes of the instant Motion, Plaintiff's complaint is deficient as a matter of law and should be dismissed in its entirety.

## STATEMENT OF FACTS

Plaintiff filed its six-count complaint on March 19, 2013, asserting claims under the federal RICO statute, 18 U.S.C. § 1962(c), as well as state law claims for defamation, commercial disparagement, civil conspiracy to defame and commercially disparage, fraud, and tortious interference.  Plaintiff is a Chinese company that, until recently, availed itself of the privilege of being publicly traded on the New York Stock Exchange's NYSE MKT.  Compl. ¶ 5. Plaintiff contends that GeoInvesting, which publishes a website by the same name; Jon R. Carnes, an individual; Seeking Alpha Ltd., which publishes a website called Seeking Alpha; and "John Does 1-10," referred to by Plaintiff collectively as "Defendants,[1]" engaged in a "conspiracy to defame Longwei's business as part of their fraudulent short-selling scheme to severely decrease Longwei's stock price, while simultaneously 'shorting' Longwei's stock, to reap massive illicit gains at the expense of Longwei and its shareholders."  *Id.* ¶ 1.

According to Plaintiff, during the fall of 2012, Defendants, "along with one or more John Doe Defendants," began maintaining short positions in Plaintiff's stock.[2]  *Id.* ¶ 30.  To that end, Defendants would "borrow" shares and profit if the stock price declined by an amount greater than the cost of borrowing those shares.  Simultaneously, Defendants were in the process of preparing a report exposing Plaintiff for operating its business as a fraud (the "Geo Report").  *Id.*

---

[1] Plaintiff also dubs GeoInvesting and Jon Carnes as the "Geo-Carnes Enterprise," as if simply using an upper-case "E" and defining them as an "Enterprise" somehow lends credence to Plaintiff's civil RICO claim.  As explained below, Plaintiff's RICO claim is deficient as a matter of law and must be dismissed.

[2] "A short sale is a market speculation technique under which a seller agrees to sell a specified security, at a specified price, to a purchaser, for future delivery where the seller does not own the security at the time of the agreement.  The seller acts in the expectation that the market price of the security will drop, enabling the seller to purchase the security for delivery to the purchaser, or 'cover' the sale, at a price lower than that at which the purchaser has agreed to pay, and thus enabling the seller to profit from the differences in prices."  Am. Jur. Sec. § 416 (citing *United States v. Naftalin*, 441 U.S. 768 (1979)); *see also* 17 C.F.R. § 242.200.

¶ 31.  According to the Geo Report, Plaintiff's "purported business operations are massively overstated and a brazen fraud."  *Id.* ¶ 34.  The report explains that constant video surveillance of Plaintiff's business operations, conducted by Defendants, revealed a total of only five tanker trucks fueling at its facilities in China over the course of several weeks, despite Plaintiff's claim that it operates as an energy company engaged in the wholesale storage and distribution of finished petroleum products.  *Id.* ¶¶ 5, 36.  Based on this video surveillance, as well as interviews with knowledgeable local residents and Plaintiff's own employees, the Geo Report observed that Plaintiff's facilities were "nearly idle" or "exaggerated."  *Id.* ¶ 38.  The report also stated that Plaintiff inflated its sales by more than 800 times, thereby defrauding its investors.  *Id.* ¶ 49.

Plaintiff alleges that the Geo Report "contains numerous false and defamatory statements of fact about Longwei's business, its officers and directors, and its filings with the SEC and China's counterpart[.]"  *Id.* ¶ 33.  Plaintiff disputes the accuracy of the Geo Report, claiming that Plaintiff's own video surveillance demonstrates "considerably more activity" at its facilities and that the report mischaracterized the extent of Plaintiff's sales.  *Id.* ¶¶ 43-51.  Plaintiff claims that photos included with the Geo Report were misleading and interviews with local residents describing Plaintiff's facilities as nearly idle since 2011 were "nothing more than innuendo."  *Id.* ¶¶ 58-60.  Plaintiff takes issue with the Geo Report's characterization of Plaintiff's SEC filings, which noted that Plaintiff failed to disclose a number of investments and transactions and failed to report certain taxes and revenue.  *Id.* ¶¶ 65-80.  Plaintiff alleges that GeoInvesting and Carnes have engaged in similar conduct in the past by publishing reports describing fraud by other Chinese companies, which Plaintiff contends is the "same type of defamatory and fraudulent

conduct alleged herein."[3]  *Id.* ¶ 91.  Plaintiff claims that "it is clear that Carnes is a primary author of and/or contributor of the Geo Report and the false and defamatory statements contained therein, as well as the mastermind of the ongoing conspiracy to defame public companies, including Longwei, to obtain massive illicit gains for the Geo-Carnes Enterprise."  *Id.* ¶ 94.

On January 3, 2013, the Geo Report was published on the GeoInvesting website and "disseminated through the Seeking Alpha Website[.]"  *Id.* ¶ 82.  After the Geo Report exposed the true nature of Plaintiff's business, Plaintiff's share price dropped from the previous day's close of $2.30 to $0.62.  *Id.*  According to Plaintiff, publication of the Geo Report through this "short-and-distort scheme" resulted in "an 84% loss in value or an approximately $242 million loss in Longwei's market capitalization" thereby "caus[ing] significant damage to Longwei and its shareholders."  *Id.* ¶¶ 22, 82.  Plaintiff claims that "upon information and belief, the Geo-Carnes Enterprise . . . made significant gains shorting Longwei's stock."  *Id.* ¶ 85.  Plaintiff alleges that the New York Stock Exchange subsequently "halted trading of its shares" and "[t]he plaintiff's bar has also weighed in on Longwei's precipitous decline in stock price, as Longwei is the subject of a potential securities class action stemming from its decline in stock price and many of the representations set forth in the Geo Report."  *Id.* ¶¶ 83, 86.

---

[3] All of these cases were resolved in favor of Carnes and GeoInvesting.  *Silvercorp Metals Inc. v. Anthion Mgmt., LLC*, 150374/2011, Docket No. 154 (Memorandum Decision of the Hon. Carol R. Edmead, J.S.C., on Motion Sequence Nos. 7 & 8), 2012 WL 3569952 (N.Y. Sup. Ct., N.Y. Cnty. Aug. 16, 2012) (attached as "Exhibit A") (dismissing the complaint in its entirety as to Jon Carnes; GeoInvesting was not a defendant in this case); *Deer Consumer Prods., Inc. v. Little Group*, 650823/2011, Docket No. 519 (Decision/Order of the Hon. Carol R. Edmead, J.S.C., on Motion Sequence No. 20) (N.Y. Sup. Ct., N.Y. Cnty. Nov. 29, 2012) (attached as "Exhibit B") (dismissing the complaint in its entirety as to Jon Carnes; GeoInvesting was not a defendant in this case); *Sino Clean Energy Inc. v. Alfred Little*, 651248/2011, Docket No. 59 (Order of Hon. Carol R. Edmead, J.S.C., on Plaintiff's Motion to Withdraw the Complaint) (N.Y. Sup. Ct., N.Y. Cnty. Sept. 27, 2012) (attached as "Exhibit C") (order granting plaintiff's motion to withdraw the complaint with prejudice; GeoInvesting and Jon Carnes, a/k/a Alfred Little, were both defendants in this case).

## SUMMARY OF ARGUMENT

This case should be dismissed for several independent reasons.  First, it should be dismissed on jurisdictional grounds.  Plaintiff purports to plead diversity jurisdiction, but there is no such jurisdiction here.  Plaintiff has named Jon Carnes as a party – a U.S. citizen who lives abroad and is consequently "stateless" for purposes of diversity jurisdiction.  Carnes' presence in this lawsuit destroys diversity jurisdiction over the entire case.  The only subject matter jurisdictional "hook" in the case, therefore, is the federal civil RICO claim.  But the conduct forming the basis of Plaintiff's complaint is not actionable under the RICO statute.  Specifically, the alleged "short-and-distort" scheme described in Plaintiff's complaint, if true, constitutes securities fraud, which an amendment to the RICO statute expressly removes from its purview.  Thus, the civil RICO claim must be dismissed.  Once this claim is dismissed, the Court can entertain Plaintiff's remaining state law claims only pursuant to supplemental jurisdiction.  The Court, however, should decline to exercise supplemental jurisdiction because no countervailing considerations warrant consideration of Plaintiff's state law claims, which raise novel and complex questions of state law.

Second, even if the Court were to consider the state law claims, all of them should be dismissed because they are based on damages theories that are fundamentally flawed.  As an initial matter, the novel and untested damages theory at the core of Plaintiff's complaint cannot provide relief.  Plaintiff attempts to recover damages that were incurred by its *shareholders*.  Simply put, a decrease in share price may be an injury to the shareholders, but it does not constitute an injury to Plaintiff.  Plaintiff's other damages theories fare no better.  GeoInvesting did not cause the delisting of Plaintiff's stock.  And, Plaintiff cannot recover litigation costs from a "potential securities class action against it" because such costs are far too speculative and there

5

is no causal link to any of GeoInvesting's actions.  Finally, Plaintiff fails to identify a single business relationship, prospective or existing, that it lost as a result of GeoInvesting's actions.

Third, the state law claims should also be dismissed because Plaintiff utterly fails to plead facts demonstrating an entitlement to relief.  As to the defamation claim, the statements in the Geo Report are not actionable defamation because they are GeoInvesting's protected opinion.  Moreover, there are no allegations that GeoInvesting acted with a malicious state of mind – the requisite scienter for Plaintiff's defamation claim.  The commercial disparagement claim fails because Plaintiff cannot establish special damages, as it incurred no monetary loss.  The civil conspiracy claim fails because it cannot survive once the underlying claims of defamation and commercial disparagement are dismissed.  As to the fraud count, Plaintiff provides no facts from which the Court could infer that GeoInvesting knew its report was false, that it intended that Plaintiff rely on it, or that Plaintiff relied on any of GeoInvesting's statements.  Finally, Plaintiff's tortious interference claim should be dismissed because Plaintiff does not identify any business relationship with which GeoInvesting allegedly interfered.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  "Rule 8 'requires a showing, rather than a blanket assertion, of entitlement to relief.'"  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007)).  The principle that the court must accept all factual allegations as true "is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  Where a complaint alleges fraud, "a party must state with particularity the circumstances constituting fraud[.]"  Fed. R. Civ. P. 9(b).

## ARGUMENT

## I.    PLAINTIFF HAS NOT PROPERLY ALLEGED DIVERSITY JURISDICTION.

Plaintiff alleges that the Court has subject matter jurisdiction over this action based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Compl. ¶ 10.[4]  Plaintiff's complaint fails to meet the pleading requirements and, in any event, cannot be brought against these named defendants.

### A.    Plaintiff's Jurisdictional Allegations Are Insufficient to Establish Diversity Jurisdiction.

In purporting to allege diversity jurisdiction, Plaintiff disregards the basic jurisdictional pleading requirements.  A plaintiff has the affirmative obligation to plead jurisdictional facts that establish a basis for diversity jurisdiction.  *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 177 F.3d 210, 222 n.13 (3d Cir. 1999) ("[T]he plaintiff must state all parties' citizenship such that the existence of complete diversity can be confirmed.").

Plaintiff's allegations are insufficient as to a number of parties to the suit.  Plaintiff contends that it is incorporated in Colorado with its principal place of business in China, that GeoInvesting is a limited liability company organized under the laws of Pennsylvania, and that Carnes "is an American citizen presently residing in Vancouver, Canada."  Compl. ¶¶ 5-7.  Whether GeoInvesting is "organized under the laws of Pennsylvania" is irrelevant because the citizenship of an LLC is determined by the citizenship of all of its members.  *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412 (3d Cir. 2010).  Plaintiff has not bothered to plead any facts about the citizenship of Seeking Alpha.  Plaintiff's complaint is also deficient because it provides no facts about the citizenship of the "John Doe Defendants 1-10."  *Foster v. Pitney Bowes Corp.*, No. Civ. A. 11-7303, 2013 WL 487196, at *10 (E.D. Pa. Feb. 8, 2013) ("Plaintiff has failed to

---

[4] Sections II and III of its Civil Cover Sheet also reflect Plaintiff's belief that "Diversity" is the basis for subject matter jurisdiction here.  Doc. No. 1-1.

plead facts supporting diversity of citizenship jurisdiction because he did not allege the citizenship of the John Doe Defendants."); *Osuch v. Optima Mach. Corp.*, No. 10-6101, 2011 WL 2708464, at *1 (E.D. Pa. July 12, 2011) (noting that "where a plaintiff does not allege the citizenship of a 'John Doe' defendant, she has not met her requirement to show that she and John Doe are citizens of two different states") (internal quotation and citation omitted).

> **B.      In Any Event, the Presence of Jon Carnes, a "Stateless" U.S. Citizen, Destroys Diversity Jurisdiction over This Action.**

Even if it were to provide sufficient facts about the citizenship of the parties, Plaintiff still cannot establish diversity jurisdiction against these Defendants.  There are limited bases for asserting diversity jurisdiction, including suits between "citizens of different States," 28 U.S.C. § 1332(a)(1), "citizens of a State and citizens or subjects of a foreign state," *id.* § 1332(a)(2), and "citizens of different States and in which citizens or subjects of a foreign state are additional parties," *id.* § 1332(a)(3).  Although Plaintiff neglects to inform the Court which provision of the diversity statute it invokes, Plaintiff cannot establish *any* basis for diversity jurisdiction.

To be a "citizen of a State" under 28 U.S.C. § 1332, "a natural person must be both a citizen of the United States *and* be domiciled within the State."  *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) (emphasis in original).  Domicile is established by two elements:  physical presence in a place and the intent to remain there indefinitely.  *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).  "A natural person is deemed to be a citizen of the state where she is domiciled."  *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d Cir. 2008).

Here, Plaintiff alleges that Carnes is a U.S. citizen residing in Canada.  Compl. ¶ 7.  Plaintiff has not alleged that Carnes is domiciled in a state within the U.S.:  there are no allegations that Carnes is physically present in any state with the intent to remain there.  Courts

8

have held that a U.S. citizen who resides abroad is not considered a citizen of any state and thus cannot sue or be sued in federal court based on diversity jurisdiction.  *E.g.*, *Newman-Green*, 490 U.S. at 828 (U.S. citizen living in Venezuela had "no domicile in any State" and was therefore "stateless"); *Swiger*, 540 F.3d at 184 ("An American citizen domiciled abroad, while being a citizen of the United States is, of course, not domiciled in a particular state, and therefore such a person is 'stateless' for purposes of diversity jurisdiction."); *Schaefer-Condulmari v. US Airways Group, Inc.*, No. 09-1146, 2009 WL 4729882, at *4 (E.D. Pa. Dec. 8, 2009) ("An American citizen domiciled abroad is not considered a citizen of any U.S. state.").  Accordingly, Carnes is not a citizen of any state.  *See Newman-Green*, 490 U.S. at 828.

According to the "complete diversity" rule, a plaintiff must satisfy the diversity statute with respect to each defendant.  *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 2 (1806).  In other words, diversity jurisdiction is met only where there is a statutory basis for *all* parties to the suit.  Plaintiff cannot assert diversity jurisdiction based on § 1332(a)(1), (2), or (3).  Although he is a U.S. citizen, Carnes is not a "citizen of a State" and therefore cannot be sued based on § 1332(a)(1) or (a)(3).  And, because Carnes is a U.S. citizen, he is not a citizen of a foreign state and therefore cannot be sued under § 1332(a)(2) or (a)(3).  *Newman-Green*, 490 U.S. at 829 (party's "'stateless' status destroyed complete diversity under § 1332(a)(3), and his United States citizenship destroyed complete diversity under § 1332(a)(2)"); *Swiger*, 540 F.3d at 184 ("American citizens living abroad cannot be sued (or sue) in federal court based on diversity jurisdiction as they are neither 'citizens of a State, *see* 28 U.S.C. § 1332(a)(1), nor 'citizens or subjects of a foreign state,' *see id.* § 1332(a)(2)."); *Frett-Smith v. Vanterpool*, 511 F.3d 396, 400 (3d Cir. 2008) ("[A]n American national, living abroad, cannot sue or be sued in federal court under § 1332(a)(2).").  Thus, Plaintiff cannot establish diversity jurisdiction here.

II.   **PLAINTIFF'S COMPLAINT FAILS TO SATISFY THE ELEMENTS OF A CIVIL RICO CAUSE OF ACTION.**

Plaintiff has apparently overlooked the fact that the RICO statute provides an independent basis for subject matter jurisdiction under 28 U.S.C. § 1331 because it involves a federal question.  18 U.S.C. § 1964(c); *Tabas v. Tabas*, 47 F.3d 1280, 1287 (3d Cir. 1995). Unfortunately for Plaintiff, however, this secondary means to establish subject matter jurisdiction does not salvage the complaint.  The civil RICO claim must be dismissed because the conduct upon which the claim is based – GeoInvesting's alleged "short and distort" scheme – is not a proper predicate act under the RICO statute.  Specifically, a statutory amendment to RICO prohibits claims based on conduct that would be actionable as securities fraud.  Accepting Plaintiff's allegations as true, Plaintiff's civil RICO claim impermissibly seeks to recover for activities that violate federal securities laws and corresponding SEC regulations.  For that reason, the claim fails as a matter of law.

A.   **The RICO Statute Explicitly Prohibits Securities Fraud from Forming the Basis of a Cause of Action.**

To state a civil RICO claim, a plaintiff must allege the existence of (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and (5) injury.  18 U.S.C. § 1962(c); *Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002).  A plaintiff must identify and prove a pattern of racketeering activity, defined as two predicate acts.  18 U.S.C. § 1962(c); *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 183 (1997).  The RICO statute "defines racketeering by a list of criminal activities that constitute predicate acts."  *Warden*, 288 F.3d at 114.  Predicate acts consist of a lengthy list of criminal offenses, including the federal statutes prohibiting wire and mail fraud.  18 U.S.C. § 1961(1).

Here, plaintiff alleges predicate acts of wire and mail fraud resulting from GeoInvesting's publication of the Geo Report.  Compl. ¶¶ 123, 125.  Specifically, Plaintiff claims that Carnes

and GeoInvesting's conduct in publishing the Geo Report, as well as reports exposing other

Chinese companies, while simultaneously shorting those companies' stocks constitutes "separate

predicate acts." *Id.* ¶ 125.

In 1995, Congress amended RICO by passing § 107 of the Private Securities Litigation

Reform Act ("PSLRA") to eliminate securities fraud as a predicate act.  According to 18 U.S.C.

§ 1964(c):

> [N]o person may rely upon any conduct that would have been
> actionable as fraud in the purchase or sale of securities to establish
> a violation of section 1962.

The Conference Committee Report addressing § 107 acknowledged that existing securities laws

provide adequate remedies for those injured by securities fraud, obviating the need to enforce

such violations through the RICO statute.  H.R. Conf. Rep. No. 104-369, at 47 (1995).  The

purpose of this amendment was "to remove any conduct that would have been actionable as

fraud in the purchase or sale of securities as racketeering activity under civil RICO," thereby

eliminating securities fraud from forming the basis of predicate acts.  *Id.*; *see also Matthews v.*

*Kidder, Peabody & Co.*, 161 F.3d 156, 157 (3d Cir. 1998) (recognizing effect of amendment).

Significantly, the Committee also noted that "*a plaintiff may not plead other specified offenses,*

*such as mail or wire fraud*, as predicate acts under civil RICO if such offenses are based on

conduct that would have been actionable as securities fraud."  H.R. Conf. Rep. No. 104-369, at

47 (emphasis added).

The Third Circuit has likewise recognized that a plaintiff cannot avoid the PSLRA bar by

attempting to artfully plead acts of wire and mail fraud which are, in reality, actionable as

securities fraud.  In *Bald Eagle Area School District v. Keystone Financial, Inc.*, 189 F.3d 321

(3d Cir. 1999), a school district brought multiple civil RICO claims against an investment

advisor after it discovered it was the victim of a Ponzi scheme.  The court dismissed the claims

11

because they were based on conduct that was actionable as securities fraud and had, in fact, been prosecuted by the SEC as a violation of § 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5.  The school district argued that the PSLRA bar should not apply because only some of the predicate acts would have been actionable as securities fraud, while others would have been actionable as wire or mail fraud.  The court rejected this argument, noting that "[a]llowing such surgical presentation of the cause of action here would undermine the congressional intent behind the RICO Amendment."  *Id.* at 330.

Therefore, even if some, but not all, of the predicate acts are actionable as securities fraud, the claim is barred by § 107.  *Id.*; *see also Gatz v. Ponsoldt*, 297 F. Supp. 2d 719, 730-31 (D. Del. 2003) ("The predicate acts consist of the use of the mails and wires to conduct a series of transactions, each involving or related to covered securities . . . [t]he conduct alleged . . . may not serve as predicate acts for purposes of a civil RICO action."); *Burton v. Ken-Crest Servs., Inc.*, 127 F. Supp. 2d 673, 676 (E.D. Pa. 2001) (courts have "rejected efforts to elude the amendment by pleading predicate acts that, while not securities fraud by name, are actionable as securities fraud and are undertaken in connection with the purchase and sale of securities." (internal quotation marks omitted)); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 86 F. Supp. 2d 481 (E.D. Pa. 2000) (where plaintiff alleged that defendants' primary purpose was to permit certain individuals to receive large bonuses through inflating stock prices, conduct was actionable as securities fraud and could not form predicate act of civil RICO claim); *Metz v. United Counties Bancorp.*, 61 F. Supp. 2d 364, 371 (D.N.J. 1999) ("Because the plaintiffs' federal RICO claim arises out of an alleged context of securities fraud, mail and wire fraud, the Court finds that it is barred by the PSLRA and dismisses it with prejudice."); *Hardord Cnty., Md. v. Mid-State Bank & Trust*, No. Civ. A. 98-817, 1999 WL 704116, at *3 (W.D. Pa. May 19,

12

1999) ("The County artfully crafted the allegations set forth in the Amended Complaint presumably to avoid any mention of securities fraud.  Nevertheless, there can be little doubt that the conduct complained of is, in fact, related to securities fraud.").

Significantly, "[t]o prevent circumvention of congressional intent, courts have interpreted the PSLRA amendment broadly."  *Eagletech Commc'ns. Inc. v. Citigroup, Inc.*, No. 07-60668-CIV, 2008 WL 3166533, at *9 (S.D. Fla. June 27, 2008).  In that sense, "where the allegations in a complaint, taken as a whole, amount to conduct that can be actionable as fraud *in connection with* the purchase or sale of securities, federal courts have uniformly applied the PSLRA's bar."  *Id.*  With these principles in mind, it is clear that Plaintiff's civil RICO claim is barred by the PSLRA, as discussed below.

**B.    Plaintiff's Complaint Is Based on Conduct That Would Be Actionable as Securities Fraud and Therefore the Civil RICO Claim Must Be Dismissed.**

Plaintiff attempts to do here what Congress explicitly prohibited in § 107 – plead mail and wire fraud to shoehorn a securities fraud claim into a civil RICO claim.  Section 17(a) of the Securities Act prohibits any person[5] from employing "any device, scheme, or artifice to defraud" or obtaining "money or property by means of any untrue statement of a material fact or any omission to state a material fact[.]"  15 U.S.C. § 77q(a)(2).  Section 10(b) of the Securities Exchange Act makes it illegal to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe[.]"  15 U.S.C. § 78j(b).  Rule 10b-5, promulgated under section 10(b), makes it unlawful for any person "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made in light of the circumstances under which they were made, not misleading . . . in

---

[5] The term "person" is defined as "a natural person, company, government, or political subdivision, agency, or instrumentality of a government.  15 U.S.C. § 78c(9).

the connection with the purchase or sale of any security."  17 C.F.R. §§ 240.10b-5(b)-(c).

Section 9(a)(4) of the Securities Exchange Act also makes it unlawful in selling, offering for

sale, purchasing or offering to purchase, to make "any statement which was at the time and in the

light of the circumstances under which it was made, false or misleading with respect to any

material fact, and which that person knew or had reasonable ground to believe was so false or

misleading" for the purpose of inducing the purchase or sale of a security.  15 U.S.C. § 78i(4).

Plaintiff alleges that GeoInvesting engaged in a "fraudulent short-selling scheme to

severely decrease Longwei's stock price, while simultaneously 'shorting' Longwei's stock, to

reap massive illicit gains at the expense of Longwei and its shareholders."  Compl. ¶ 1.  Plaintiff

contends that GeoInvesting accomplished this scheme by publishing false information about it in

the Geo Report.  *Id.* ¶ 14.  These allegedly false statements, in turn, enabled GeoInvesting to

intentionally "manipulate the public market for Longwei common stock and artificially drive

down Longwei's stock price[.]"  *Id.* ¶ 29.  This was advantageous to GeoInvesting because it had

previously "[begun] initiating and maintaining short positions in Longwei's stock."  *Id.* ¶ 30.

GeoInvesting allegedly knew that publishing the Geo Report would decrease Plaintiff's share

price, and Plaintiff's share price did decrease on the day that the Geo Report was published.  *Id.*

¶¶ 31, 82.  Plaintiff claims that GeoInvesting committed mail and wire fraud by "engag[ing] in

systematic short selling of a public company's stock while simultaneously and surreptitiously

fabricating and preparing false and defamatory statements and other information to publicly

tarnish Longwei as a fraud, thereby artificially driving Longwei's stock price down and reaping

huge gains at the expense of Longwei and its shareholders."  *Id.* ¶ 122.

The allegations above – that GeoInvesting published false statements about Plaintiff,

thereby intentionally manipulating the company's stock price and reaping the profits by engaging

in short sales – is clearly actionable as securities fraud.  "As a general rule, short selling is a permissible and well-established securities trading practice.  Indeed, the SEC has long held the view that short selling provides the market with important benefits[.]"  *S.E.C. v. Colonial Inv. & Mgmt. LLC*, 659 F. Supp. 2d 467, 470 (S.D.N.Y. 2009) (internal quotation marks omitted) *aff'd*, 381 F. App'x 27 (2d Cir. 2010).  But, because short selling "may be used to illegally manipulate stock prices . . . the SEC has promulgated various restrictions on short selling."[6]  *Id.* at 471 (internal quotation marks omitted) .  "[F]raudulent manipulation of stock prices unquestionably qualifies as fraud in connection with the purchase or sale of securities."  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 89 (2006) (internal quotation marks omitted).

Accepting Plaintiff's allegations as true, GeoInvesting has engaged in a "scheme" to obtain "money . . . by means of any untrue statement of material fact," *i.e.,* the allegedly false statements in the Geo Report.  *See* 15 U.S.C. § 77q(a)(2).  GeoInvesting has also employed "a manipulative device" in connection with the sale of Longwei's stock.  15 U.S.C. § 78j(b); *see also Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976) (the term "manipulative . . . connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities").  Such conduct would likewise violate Rule 10b-5.  *S.E.C. v. Zandford*, 535 U.S. 813, 816 n.1 (2002) ("The scope of Rule 10b-5 is coextensive with the coverage of § 10(b).").  GeoInvesting's conduct would also be prohibited as market manipulation under § 9(a)(4), given that GeoInvesting allegedly made a false statement of material fact for the purpose of inducing the sale of securities (namely, inducing investors to sell their shares of Longwei).  This alleged "short and distort" scheme is actionable as securities fraud.  *In re Olympia Brewing Co. Sec. Litig.*, 613 F. Supp. 1286, 1291 (N.D. Ill. 1985)

---

[6] For instance, SEC Regulation SHO requires short sellers in all equity securities to locate securities to borrow before selling.  *See* 69 Fed. Reg. 48008 (Aug. 6, 2004).

("Regardless of whether market manipulation is achieved through deceptive trading activities or deceptive statements as to the issuing corporation's value, it is clear that the essential element of the claim is that *inaccurate* information is being injected into the marketplace.") (emphasis in original).  In fact, the SEC has initiated prosecutions based on precisely this type of conduct. *E.g.*, *SEC v. Paul S. Berliner*, Litigation Rel. No. 20537 (April 24, 2008) (trader spread false rumors about company, while taking short positions in the stock and profiting when the stock price declined), *available at* http://www.sec.gov/litigation/litreleases/2008/lr20537.htm (last visited May 20, 2013).

In light of the PSLRA bar, fraudulent short selling schemes are not actionable under RICO.  *E.g.*, *Eagletech*, 2008 WL 3166533, at *10 (where plaintiff's complaint contained allegations of stock manipulation, including through short selling stock, court held that PSLRA bar applied).  Plaintiff cannot avoid this conclusion by arguing that it has pled mail and wire fraud as predicate acts.  *Bald Eagle*, 189 F.3d 321 at 330.  Even if GeoInvesting had committed securities fraud – which of course GeoInvesting disputes – Plaintiff cannot bring a RICO claim to enforce alleged securities violations.[7]  The civil RICO claim must be dismissed.

## III.    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S REMAINING STATE LAW CLAIMS.

Once the RICO claim is dismissed, the Court should refuse to exercise supplemental jurisdiction over Plaintiff's related state law claims, given that "the district court has dismissed all claims over which it has original jurisdiction[.]"  28 U.S.C. § 1367(c)(3); *see also United*

---

[7] The fact that Plaintiff may not have standing to bring an action against GeoInvesting based on this alleged securities fraud has no bearing on whether the conduct is actionable as securities fraud within the meaning of § 107.  *E.g.*, *MSLMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 277 (2d Cir. 2011) ("We conclude that section 107 of the PSLRA bars civil RICO claims alleging predicate acts of securities fraud, even where a plaintiff cannot itself pursue a securities fraud action against the defendant."); *Howard v. Am. Online, Inc.*, 208 F.3d 741, 749 (9th Cir. 2000); *Eagletech*, 2008 WL 3166533, at *12; *Gatz*, 297 F. Supp. 2d at 731.

*Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").  As set forth in further detail below, Plaintiff's state law claims raise a number of novel and complex issues under Pennsylvania law, which provides yet another reason to refuse supplemental jurisdiction.  28 U.S.C. § 1367(c)(1) ("The district courts may decline to exercise supplemental jurisdiction . . . if [] the claim raises a novel or complex issue of State law[.]").  Accordingly, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."  *Gibbs*, 383 U.S. at 726.

Although 28 U.S.C. § 1367 vests district courts with power to hear supplemental state law claims, "pendent jurisdiction should be declined where the federal claims are no longer viable, absent 'extraordinary circumstances.'"  *Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984).  In fact, the Third Circuit has held that "the district court ***must*** decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (internal quotation marks omitted) (emphasis added).  Here, those considerations do not provide any affirmative justification for the Court to go out on a limb and rule on novel and complex issues of state law.  Furthermore, there is no indication that Plaintiff would not be able to file its claims in state court in time to secure relief or that it would suffer any prejudice as a result of dismissal.  *Shaffer*, 730 F.2d at 912 ("[T]he district court should focus on prejudice to the plaintiffs resulting from possible delays in adjudicating their state law claims, rather than the investment of time already devoted to the federal court lawsuit.").  The state law claims should be dismissed.

IV.    **PLAINTIFF'S DAMAGES THEORIES ARE FUNDAMENTALLY FLAWED AND PROVIDE NO BASIS FOR RECOVERY.**

Even if the Court were to consider Plaintiff's state law claims based on supplemental jurisdiction, all of the claims are deficient as a matter of law.  Plaintiff's complaint has attempted to take one perceived wrong and morph it into five separate claims.  At their core, all of Plaintiff's state law claims are based on what Plaintiff believes is defamatory conduct by GeoInvesting.[8]  Plaintiff attempts to dice up this one perceived wrong by giving it different names – commercial disparagement, civil conspiracy, fraud, and tortious interference.  As detailed below, all of these claims are based on the same faulty damages theories and all of them fail to state a claim upon which relief can be granted.

A.    **Pennsylvania Courts Have Not Recognized Plaintiff's Novel "Loss of Market Capitalization" Theory.**

Plaintiff alleges that GeoInvesting's defamation-based conduct caused Plaintiff to lose approximately $242 million in market capitalization,[9] and that Plaintiff should be compensated for this loss.  But no Pennsylvania court has ever permitted a corporate plaintiff to recover in the defamation context for a loss in the company's market capitalization – a loss that might be realized by Plaintiff's shareholders, but not by Plaintiff itself.  Plaintiff therefore asks this Court to consider a novel issue of state law that, as far as GeoInvesting is aware, has never been

---

[8] Plaintiff's Civil Cover Sheet is yet again informative.  When permitted only one way to summarize the nature of its suit in Section IV, Plaintiff chose "Assault, Libel & Slander."  Doc. No. 1-1.

[9] As a preliminary matter, this number is pure fantasy.  Plaintiff selected the stock's highest mid-day price from the day before the Geo Report was released and compared it to the stock's lowest mid-day price on the day the report was released.  Plaintiff's deceptive comparison ignores the benchmark measurements of opening and closing stock prices in a transparent effort to present the most inflated number possible.

recognized by Pennsylvania courts.[10]  Significantly, other courts considering this theory of damages have squarely rejected it.  *SCO Group, Inc. v. Novell, Inc.*, No. 2:04-CV-139 TS, 2010 WL 413807, at *6 (D. Utah Jan. 28, 2010) ("The Court agrees that decline in stock price is not an appropriate claim for special damages."); *Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, No. 1:00-CV98K, 2001 WL 670927, at *3-4 (D. Utah March 26, 2001) ("The court agrees with [defendant] that the alleged special damages [*i.e.,* loss of market capitalization] are not the type recoverable under Utah special damages law.  The alleged special damages in this case are only conjecture and do not result in the realized and liquidated losses required under Utah law."); *Salit v. Ruden, McClosky, Smith, Schuster & Russell,* 742 So.2d 381, 388 (Fla. Ct. App. 1999) (rejecting theory that a decline in stock value constituted sufficient special damages in the injurious falsehood context).

At the very least, Plaintiff's market capitalization theory occupies untested waters under Pennsylvania defamation law and it is therefore unclear whether it is a sufficient basis for alleging the required element of special (*i.e.,* monetary) damages.  Such a novel question of state law should be left to the Pennsylvania courts to decide.

---

[10] A federal court sitting in diversity or exercising supplemental jurisdiction must apply state substantive law.  *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)); *Food Team Int'l, Ltd. v. Unilink, LLC*, 872 F. Supp. 2d 405, 415 (E.D. Pa. 2012).   The district court must apply the choice of law rules of the forum in which it sits.  *Gen. Star Nat'l Ins. Co. v. Liberty Mut. Ins. Co.*, 960 F.2d 377, 370 (3d Cir. 1992).  Accordingly, Pennsylvania choice of law rules control.  "Pursuant to the Pennsylvania choice of law analysis, the first step requires a determination of whether the laws of the competing states actually differ."  *Carbis Walker, LLP v. Hill, Barth and King, LLC*, 930 A.2d 573, 578 (Pa. Super. Ct. 2007).  If the laws of the jurisdictions with ties to the case do not differ, "then a true conflict is not present and no further analysis is necessary."  *Id.*  On the face of the complaint, Pennsylvania and Colorado are the only potentially "competing states" at issue.  Based on a review of Pennsylvania and Colorado substantive law, there is no applicable difference between the laws of Pennsylvania and Colorado with respect to Plaintiff's state law claims.  Because there is no true conflict, Pennsylvania law should govern.

**B.      Plaintiff Has Pled No Causal Link Between Its Delisting from the New York Stock Exchange's NYSE MKT and GeoInvesting's Conduct.**

Plaintiff also alleges that the "ceasing of its shares being traded on the NYSE MKT" is a basis for recovery.  Compl. at ¶ 102.  Plaintiff does not (and cannot), however, allege the existence of any causal link between the publication of the Geo Report and the delisting of Plaintiff's stock.  Plaintiff does not allege that GeoInvesting asserts any control over the NYSE MKT,[11] that GeoInvesting requested that NYSE MKT delist Plaintiff's stock from its exchange, or that GeoInvesting has any relationship with the NYSE MKT at all.  Finally, Plaintiff does not allege that the Geo Report was the reason that Plaintiff's stock was delisted.[12]  The Court should disregard this theory of damages with respect to all of Plaintiff's claims.

**C.      Plaintiff Cannot Recover Unidentified Litigation Costs.**

The complaint further alleges that GeoInvesting's defamation-based conduct has caused Plaintiff to incur "litigation costs resulting from a potential securities class action against it."  *Id.*  But Plaintiff provides no details about these supposed costs.  Thus, Plaintiff's claim for damages is merely speculative because the litigation costs are unidentifiable.  *Logan v. Mirror Printing*

---

[11] The NYSE MKT is operated by NYSE Euronext, an independent corporate entity that is completely unaffiliated with any of the Defendants.

[12] The New York Stock Exchange set forth its reasons for delisting Plaintiff's stock in a comprehensive memorandum that it publicly filed with the SEC.  Exhibit 99.25 to document 25-NSE, dated March 22, 2013, and filed by NYSE MKT LLC with respect to Plaintiff, available at: http://www.sec.gov/Archives/edgar/data/1111817/000114331313000015/lphform2503222013.htm. (last visited May 20, 2013) (attached as "Exhibit D").  This delisting memorandum states numerous reasons for Plaintiff's delisting, including:  (1) "the Company failed to fully and completely respond to Staff's January 25, 2013 letter and has not supplemented responsive information to certain requests as represented," (2) "the Company's board of directors declined to approve the audit committee's resolution to conduct an investigation that would include retaining independent counsel and forensic accountants," and (3) "the Company or its management has engaged in operations, which, in the Staff's opinion, are contrary to the public interest."  Because it is a public record, the Court may properly consider this document in deciding the motion to dismiss.  *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

*Co. of Altoona, Pa.*, 600 A.2d 225, 227 (Pa. Super. Ct. 1991) ("The Superior Court has observed

that the test of whether damages are remote or speculative . . . deals with the more basic question

of whether there are identifiable damages." (internal quotation marks omitted)).

Moreover, as Plaintiff's own pleading states, these litigation costs are nothing but

"potential."  It is well established that a plaintiff must have suffered an "injury in fact" that is

both "'actual or imminent'" and not merely "'conjectural or hypothetical'" in order to have

standing to obtain relief.  *Phillips v. St. Mary Med. Ctr.*, Civil Action No. 12-2363, 2013 WL

1124372, at *2 (E.D. Pa. March 19, 2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560-61 (1992).  A passing reference in the complaint to "potential" costs obviously does not

meet this standard.  Accordingly, Plaintiff cannot recover based on this "measure" of damages.

> **D.**     **Plaintiff Fails to Identify a Single Lost Business Relationship.**

The final damages theory mentioned in the complaint is that Plaintiff has experienced

"other damages stemming from loss of various business relationships."  Compl. ¶¶ 102, 112,

126, 130.  This vague claim for relief does not even remotely satisfy the pleading standard.  In

order to properly allege "damages stemming from loss of various business relationships," a

plaintiff ***must actually identify*** existing or prospective business relationships that have been lost.

*E.g., Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466 (Pa. 1979) (dismissing claim for

interfering with business relationships because plaintiff did not identify any contract right that

was injured by defendant's conduct).  Here, Plaintiff does not even attempt to meet this standard.

## V.     PLAINTIFF FAILS TO PLEAD ANY VIABLE STATE LAW CLAIMS.

Aside from the inherent deficiencies with Plaintiff's damages theories, Plaintiff has also

failed to plead facts supporting its state law claims.  All of these claims should be dismissed for

this reason, as well.

### A.   The Defamation Claim Should Be Dismissed Because GeoInvesting's Statements Are Protected Opinion and Plaintiff Has Not Pled That GeoInvesting Acted with Malice.

In Pennsylvania, the elements of a defamation claim are codified by statute:

> In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; (7) abuse of a conditionally privileged occasion.

42 PA. CONS. STAT. § 8343(a).  Plaintiff cannot state a claim for defamation because (a) the Geo Report is rightfully considered non-actionable opinion and because (b) Plaintiff has not pled that GeoInvesting knew or should have known that the Geo Report was false.

### 1.   The Geo Report Is Constitutionally Protected Opinion.

In a transparent effort to try to prejudice GeoInvesting before the Court, Plaintiff proudly references three state court litigations from New York County, New York as supposed evidence that the "Geo-Carnes Enterprise has admitted to previously targeting . . . companies with his [sic] 'short-and-distort' scheme, *i.e.* publishing false reports about the companies while simultaneously shorting their stock."  Compl. at ¶ 22.  But the worst that Plaintiff can say about Carnes and GeoInvesting is that they "have been named defendants in at least three (3) separate lawsuits."  *Id.* at ¶¶ 23-24.  The reason that Plaintiff cannot say more is that *all three cases were disposed of in the defendants' favor*.  Two of the cases were dismissed on substantive grounds at

the motion to dismiss stage.[13]  The third case was voluntarily withdrawn with prejudice by the plaintiff.[14]

In the previous cases, the plaintiffs attempted to plead causes of action for defamation, and in both cases that addressed the question, the defamation claims were dismissed as non-actionable opinion at the motion to dismiss stage.  Exhibits A and B.  This Court should do the same.

In *Dougherty v. Bowerton Times*, the Pennsylvania Superior Court adopted Section 566 of the Restatement (Second) of Torts, entitled "Expression of Opinion."  547 A.2d 778, 785 (Pa. Super. Ct. 1988).  Section 566 sets forth the rule governing non-actionable opinion:

> A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action on defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is.  But an expression of opinion that is not based on disclosed or assumed facts and therefore implies that there are undisclosed facts on which the opinion is based, is treated differently.

Restatement (Second) of Torts § 566, cmt. (c).  When a statement explicitly points to facts in support of the views expressed, as the Geo Report did, such views are non-actionable opinions. *E.g., Parano v. O'Connor*, 641 A.2d 607, 609 (Pa. Super. Ct. 1994) (statements that hospital administrator was adversarial, less than helpful, and uncooperative in response to efforts to

---

[13] Exhibit A, *Silvercorp Metals Inc. v. Anthion Mgmt., LLC*, 150374/2011, Docket No. 154 (Memorandum Decision of the Hon. Carol R. Edmead, J.S.C., on Motion Sequence Nos. 7 & 8), 2012 WL 3569952 (N.Y. Sup. Ct., N.Y. Cnty. Aug. 16, 2012) (dismissing the complaint in its entirety as to Jon Carnes; GeoInvesting was not a defendant in this case); Exhibit B, *Deer Consumer Prods., Inc. v. Little Group*, 650823/2011, Docket No. 519 (Decision/Order of the Hon. Carol R. Edmead, J.S.C., on Motion Sequence No. 20) (N.Y. Sup. Ct., N.Y. Cnty. Nov. 29, 2012) (dismissing the complaint in its entirety as to Jon Carnes; GeoInvesting was not a defendant in this case).

[14] Exhibit C, *Sino Clean Energy Inc. v. Alfred Little*, 651248/2011, Docket No. 59 (Order of Hon. Carol R. Edmead, J.S.C., on Plaintiff's Motion to Withdraw the Complaint) (N.Y. Sup. Ct., N.Y. Cnty. Sept. 27, 2012) (order granting plaintiff's motion to withdraw the complaint with prejudice; GeoInvesting and Jon Carnes, a/k/a Alfred Little, were both defendants in this case).

purchase hospital were not defamatory and were statements of opinion supported by disclosed facts, even though administrator may have found statements annoying or embarrassing).  The Geo Report represents the opinions of its authors and also discloses the facts on which those opinions are based.  Accordingly, the defamation claim should be dismissed because Plaintiff cannot rely on non-actionable opinion to state its claim.

### 2. Plaintiff Is a Public Figure, or at Least a Limited Purpose Public Figure, for Defamation Purposes.

A plaintiff alleging defamation must also plead the requisite scienter.  42 PA. CONS. STAT. § 8344 ("[N]o damages shall be recovered unless it is established to the satisfaction of the jury, under the direction of the court as in other cases, that the publication has been maliciously or negligently made[.]").  Although a private figure plaintiff need establish only negligence, public figures and limited purpose public figures must allege malice.  *Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pa.*, 923 A.2d 389, 405 (Pa. 2007).

Plaintiff is rightfully considered a public figure.  "When a corporation 'goes public' by publicly offering its securities, it has taken a specific, voluntary action, the known result of which will be mandatory, increased public scrutiny.  The necessary consequence is publicity."  1 Robert D. Sack, *Sack on Defamation* § 5:3.7 (4th ed. 2010).  Courts have held that publicly traded companies are "public figures" in the defamation context.  *Compuware Corp. v. Moody's Investors Servs.*, 499 F.3d 520, 525 (5th Cir. 2007) ("The parties do not dispute that [plaintiff], as a publicly held corporation, is a public figure for purposes of First Amendment defamation analysis."); *Reliance Ins. Co. v. Barron's*, 442 F. Supp. 1341, 1347-48 (S.D.N.Y. 1977) (large corporation whose common stock was almost entirely owned by another company whose shares were traded on the NYSE was a "public figure in the general sense, and also in the specific context of its [securities decisions]"); *Fotochrome, Inc. v. N.Y. Herald Tribune, Inc.*, 305

N.Y.S.2d 168, 169 (N.Y. Sup. Ct., Queens Cnty. 1969) ("a publicly held corporation whose stock is actively traded on the American Stock Exchange" was a public figure for defamation purposes).  Plaintiff states that it is a "corporation organized under the laws of the State of Colorado," that its stock was "publicly-traded on the New York Stock Exchange's NYSE MKT," and that it was required to make regular public disclosures by the SEC and the Chinese State Administration for Industry and Commerce.  Compl. at ¶¶ 5, 33.  Based on its own allegations, then, Plaintiff should be considered a public figure for purposes of its defamation claim.

In any event, Plaintiff must be considered, at the very least, a limited purpose public figure due to its publicly-traded status and the affirmative steps it has taken to thrust itself into an existing controversy.  A limited purpose public figure "is an individual who 'voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.'" *Am. Future Sys.*, 923 A.2d at 401 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974)).  Corporations have been considered limited purpose public figures in the defamation context.  *E.g.*, *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 61 Cal. Rptr. 3d 29, 39 n.10 (Cal. Ct. App. 2007) ("The parties do not dispute that the [publicly-traded corporate plaintiffs] are limited public figures.").  A plaintiff can become a limited purpose public figure by either responding to an existing controversy or creating a controversy through its own actions. *Am. Future Sys.*, 923 A.2d at 401.  A controversy is created where there is a "subject-matter nexus between the content of the plaintiff's public solicitations and advertisements on the one hand, and the allegedly defamatory report at issue on the other."  *Id.* at 403.

Plaintiff thrust itself into an existing controversy about its financial performance and dubious business operations, and also created such a controversy, through its own affirmative publication and advertising efforts designed cloak its operations and performance with the

25

appearance of legitimacy.  Compl. Ex. A at 4, 7 ("[Longwei's] October 11, 2012 RedChip PowerPoint presentation"); *id.* at 10 ("May 2011 RedChip promotional video"); *id.* at 10-11 ("[Longwei's] Q2 earnings conference call transcript dated February 10, 2012").  In that sense, Plaintiff made the "promotional video . . . to try to convince investors that its Taiyuan and Gujiao fueling businesses were real."  *Id.*  Plaintiff has both responded to an existing controversy, as well as generated additional controversy through its own efforts.

Given that it is either a public figure or a limited purpose public figure, Plaintiff must allege sufficient facts which make it plausible that GeoInvesting acted "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not."  *Curran v. Philadelphia Newspapers, Inc.,* 546 A.2d 639, 642 (Pa. Super. Ct. 1988) (quoting *N.Y. Times Co. v. Sullivan,* 376 U.S. 254, 279-80 (1964)).  Plaintiff merely alleges, in conclusory fashion, that "Defendants intentionally or recklessly authored and/or published these false and defamatory statements without sufficient factual bases for making these false and defamatory statements."  Compl. ¶ 99.  Because Plaintiff offers no supporting facts to suggest that GeoInvesting knew or should have known that the Geo Report was false, this bare legal conclusion is plainly insufficient.  *See Iqbal*, 556 U.S. at 678.  Accordingly, Plaintiff has failed to plead the requisite malice and the defamation claim must be dismissed.

### B.   Plaintiff's Commercial Disparagement Claim Fails Because Plaintiff Has Not Pled That It Incurred a Monetary Loss.

The tort of commercial disparagement "is actionable where: (1) that the statement is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that the publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) that the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity."  *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 246

(Pa. 2002) (citing Restatement (Second) of Torts § 623(A).  The third element (or "special damages") requires some actual pecuniary loss experienced by the plaintiff.  *Id.* at 247.  As discussed above, Plaintiff's complaint fails to articulate any plausible measure of monetary damages.  As a result, Plaintiff's commercial disparagement claim should be dismissed.

### C.   The Civil Conspiracy Claim Should Be Dismissed Because the Defamation and Commercial Disparagement Claims Fail.

The essential elements of a claim for civil conspiracy are:  "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage."  *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. Ct. 2008).  Plaintiff's civil conspiracy claim fails for two reasons.  First, Plaintiff provides no facts as to what "overt act" was done in furtherance of the alleged conspiracy.  Plaintiff claims that certain unspecified Defendants "acted with a common purpose" and "orchestrated the authoring and/or publication of the" Geo Report.  Compl. ¶¶ 110-111.  But Plaintiff fails to articulate any facts as to how certain Defendants supposedly "acted" or "orchestrated," when they did so, or how it was done.  *E.g.*, *Hankin Family P'ship v. Upper Merion Tp.*, Civil Action No. 01-1622, 2012 WL 43599, at *17 (E.D. Pa. Jan. 6, 2012) (where plaintiff alleged only that defendants "agreed and acted" and did not allege "specific acts" taken by defendants, allegations were insufficient to state a plausible civil conspiracy claim).  Plaintiff's use of general and sweeping language only highlights its inability to provide the necessary facts to support its conspiracy claim.

Second, the conspiracy claim fails because there are no viable underlying claims to support it.  Critically, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *McKeeman v. Corestates Bank, N.A.,* 751 A.2d

27

655, 660 (Pa. Super. Ct. 2000) (internal quotations and citation omitted).  Because Plaintiff fails

to state a claim for either defamation or commercial disparagement – the alleged bases of the

conspiracy – the civil conspiracy claim must be dismissed as well.  *E.g.*, *Phillips*, 959 A.2d 420.

> **D.      Plaintiff Has Not Pled the Elements of a Fraud Claim.**

"To establish a *prima facie* case of fraud, a plaintiff must show: (1) a representation; (2)

which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or

recklessness as to whether it is true or false; (4) with the intent of misleading another into relying

on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was

proximately caused by the reliance."  *Kostryckyj v. Pentron Lab. Techs., LLC*, 52 A.3d 333, 338

(Pa. Super. Ct. 2012).  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state

with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Plaintiff fails to plead the most basic of the elements of a fraud claim, let alone with the

requisite particularity mandated by Rule 9(b).  First, Plaintiff fails to plead that GeoInvesting

made any misrepresentation with knowledge of its falsity or with reckless disregard as to

whether it was true of false.  This "knowledge of falsity" element shares an identical definition

with the "actual malice" element required by a claim for defamation.  *See, e.g., Ertel v. Patriot-

News Co.*, 674 A.2d 1038, 1041 (Pa. 1996) (citing *Sullivan*, 376 U.S. at 279-80) (defining

"actual malice" as acting "with knowledge that it was false or with reckless disregard of whether

it was false or not").   For the same reasons that Plaintiff fails to plead "actual malice," Plaintiff

likewise does not satisfy the requirements for pleading that element in the fraud context.

Second, Plaintiff does not allege that GeoInvesting intended that Plaintiff rely on any

representation or that Plaintiff did, in fact, rely on any representation.  "The complaint must

provide sufficient facts to support a plaintiff's contention that the defendant intended to induce

him to act based on the misrepresentation."  *Huddleston v. Infertility Ctr. of Am., Inc.*, 700 A.2d

453, 461 (Pa. Super. Ct. 1997).  Plaintiff must allege actual reliance on the misrepresentation.

*Woodward v. Dietrich*, 548 A.2d 301, 310 (Pa. Super. Ct. 1988).  Plaintiff claims that

GeoInvesting made the alleged misrepresentations in the Geo Report "for the purpose of and

intending that *Longwei's shareholders and market participants as a whole* would rely on

them[.]"  Compl. ¶ 116 (emphasis added).  Plaintiff's allegations that GeoInvesting made

misrepresentations intending that others – aside from Plaintiff – rely on them are patently

insufficient to state a fraud claim.  Moreover, Plaintiff does not allege that it actually did rely on

any misrepresentations.  As Plaintiff states, "*[t]he market*, in fact, relied on these statements to

its detriment[.]"  *Id.* ¶ 117 (emphasis added).  These deficiencies are fatal to Plaintiff's fraud

claim.

**E.    The Tortious Interference Claim Fails Because Plaintiff Has Not Pled That It Lost Any Existing or Prospective Business Relationships.**

"To maintain an action for intentional interference with contractual relations one must

allege: (1) the existence of a contractual, or prospective contractual relation between the

complainant and a third party; (2) purposeful action on the part of the defendant, specifically

intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the

absence of a privilege or justification on the part of the defendant; and (4) the occasioning of

actual legal damage as a result of the defendant's conduct."  *Shiner v. Moriarty*, 706 A.2d 1228,

1238 (Pa. Super. Ct. 1998) (internal quotations and citation omitted).  Remarkably, Plaintiff

brings this claim *without identifying any existing or prospective business relationship*, let alone

any details about how GeoInvesting somehow interfered with some imagined relationship.  *E.g.*,

*Thompson*, 412 A.2d at 466 (dismissing claim for interfering with business relationships because

plaintiff did not identify any contractual right that was injured by defendant's conduct);

*Hemispherx Biopharma, Inc. v. Asensio*, No. 3970 July Term 2000, 2002 WL 31387765, at *19-

29

20 (Ct. Com. Pl. Philadelphia Cnty., Oct. 22, 2002) (refusing to overturn a directed verdict on a tortious interference claim where plaintiff failed to "specifically identify any third party with which plaintiff had a contract or a prospective contract [to do business]").

Plaintiff relies entirely on the conclusory recitation that it has experienced "damages stemming from the loss of various business relationships."  Compl. ¶¶ 102, 108, 112, 119, 126, 130.  Such legal conclusions are properly disregarded on a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  Without any facts supporting the vague generalization that "various" business relationships were lost, Plaintiff fails to satisfy this claim's most basic pleading requirement.

Moreover, Plaintiff likewise has not pled any pecuniary loss.  Plaintiff cannot fall back on the crutch of "general, business reputational harm" because Pennsylvania law does not recognize such harm as a sufficient damages theory for tortious interference.  *Shiner*, 706 A.2d at 1239 ("[A]party that is unable to prove actual pecuniary loss flowing from an alleged interference with contract cannot proceed under that theory to recover solely for harm to business reputation as a result of the challenged conduct.").  This claim should be dismissed.

## **CONCLUSION**

For all the foregoing reasons, the Court should dismiss Plaintiff's complaint with prejudice.  *Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir. 2007).


Respectfully submitted,

Dated:  May 20, 2013

/s/ William M. McSwain
William M. McSwain (PA 86499)
Jennifer E. Burke (PA 309164)
Nicholas S. Feltham (PA 312335)
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6999
Phone:  215-988-2700
Fax:  215-988-2757
E-mail:  william.mcswain@dbr.com;
jennifer.burke@dbr.com;
nicholas.feltham@dbr.com

*Attorneys for Defendant GeoInvesting, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I, Jennifer E. Burke, hereby certify that on this 20th day of May, 2013, a true and correct

copy of the foregoing Memorandum in Support of Defendant GeoInvesting, LLC's Motion to

Dismiss the Complaint has been filed electronically using the Court's Electronic Case Filing

("ECF") System.  The document is available for viewing and downloading from the Court's ECF

System.

Dated:  May 20, 2013                                              <u>/s/ Jennifer E. Burke</u>